NIPMUC PROPERTIES, LLC, ET AL. *v.*
CITY OF MERIDEN ET AL.
(AC 32313)

DiPentima, C. J., and Lavine and Bear, Js.

Argued May 20—officially released August 23, 2011

*Dominic J. Aprile,* for the appellants (plaintiffs).

*Deborah Leigh Moore,* for the appellee (named defendant).

*Opinion*

BEAR, J. The plaintiffs, Nipmuc Properties, LLC (Nipmuc), and Summitwood Development, LLC (Summitwood), appeal from the summary judgment rendered by the trial court in favor of the defendant

city of Meriden in their action to quiet title to a fifty-two acre parcel of land[1] owned by the defendant, in which Nipmuc asserts a leasehold interest.[2] On appeal, the plaintiffs claim that the trial court improperly applied the doctrine of res judicata to bar their action. Because we agree with the defendant that the plaintiffs' claims in this litigation are barred by the doctrine of res judicata, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of the plaintiffs' appeal. In 2002, Nipmuc instituted an action in the trial court (*Nipmuc I*), seeking a declaratory judgment as to the validity of an escrowed lease and, by way of relief, an order requiring the escrow agent to deliver the lease to Nipmuc.[3] *Nipmuc Properties, LLC* v. *PDC-El Paso Meriden, LLC*, Superior Court, judicial district of New Haven at Meriden, Docket No. CV-02-0281664 (August 11, 2005) (*M. Taylor, J.*). That action arose out of a dispute over ownership and lease of a portion of a large tract of undeveloped property owned by Nipmuc, situated in Meriden and in the town of Berlin, which, in part, was the proposed site of an electric generation facility. Id.

Nipmuc and Summitwood had entered into an arrangement under which Summitwood would purchase the entire tract of undeveloped property from

[1] The parcel of property that is the subject of this litigation is described as consisting of 51.935 acres. However, in the various pleadings referred to in this opinion there is some inconsistency as to the exact size of the parcel. For the sake of clarity and convenience, this opinion will refer to the subject parcel as the "fifty-two acre parcel."

[2] The Connecticut siting council also was a defendant in the underlying action. The trial court, however, granted its motion to dismiss on June 12, 2008. The plaintiffs did not appeal from the judgment dismissing their claims against the siting council. Thus, the siting council is not a party to the present appeal, and we refer to Meriden as the sole defendant.

[3] Nipmuc's claim seeking a judgment declaring the lease valid and in effect was abandoned at a hearing held on July 15, 2005. *Nipmuc Properties, LLC* v. *PDC-El Paso Meriden, LLC*, Superior Court, judicial district of New Haven at Meriden, Docket No. CV-02-0281664 (August 11, 2005) (*M. Taylor, J.*).

Nipmuc, and Summitwood would have the exclusive right to purchase or lease back from the subsequent purchaser, who was to buy such property and complete the electric generation facility project, approximately thirty acres of the property. Id. Summitwood then entered into an agreement to sell the entire tract of undeveloped property to PDC-El Paso Meriden, LLC (PDC-El Paso). Id. The final version of the agreement between Summitwood and PDC-El Paso contained a provision under which PDC-El Paso would lease a fifty-two acre parcel, all of which was located in Meriden, to Summitwood, acting on behalf of Nipmuc, instead of the thirty acre parcel, and the lease of the fifty-two acre parcel would be held in escrow until the electric generation facility project was approved by the Connecticut siting council (siting council). Id. After the sale to PDC-El Paso occurred, PDC-El Paso almost immediately sold the entire tract to Meriden Gas Turbines, LLC (Meriden Gas Turbines). Id. The siting council eventually issued to Meriden Gas Turbines the necessary permits for the construction of the electric generation facility, but it rejected the release from escrow of the lease to Summitwood and directed that the fifty-two acre parcel be donated to Meriden. Id.

After a trial to the court, the *Nipmuc I* court rendered a decision in favor of the defendants in that action, including the present defendant.[4] Id. In ruling for the *Nipmuc I* defendants, the court found that approval of the underlying lease arrangement by the siting council was a condition precedent to delivery of the lease from escrow and that such condition had not been met. Id. On appeal, this court affirmed the judgment of the trial court, holding that "[a] thorough review of the record

---

[4] The defendants in the *Nipmuc I* action were PDC-El Paso, Meriden Gas Turbines, Thomas P. Cadden, and Meriden. *Nipmuc Properties, LLC* v. *PDC-El Paso Meriden, LLC*, 103 Conn. App. 90, 91, 927 A.2d 978, cert. denied, 284 Conn. 932, 934 A.2d 247 (2007).

supports the court's conclusion that approval by the siting council was a condition precedent to the delivery of the lease . . . ." *Nipmuc Properties, LLC* v. *PDC-El Paso Meriden, LLC*, 103 Conn. App. 90, 100, 927 A.2d 978, cert. denied, 284 Conn. 932, 934 A.2d 247 (2007).

Following the trial court's judgment in *Nipmuc I*, the defendant acquired title to the fifty-two acre parcel, inter alia, from Meriden Gas Turbines.[5] In November, 2007, the plaintiffs commenced the present action, the third state court action brought by Nipmuc and the second brought by Summitwood concerning the fifty-two acre parcel, alleging that the defendant had prevented Nipmuc from taking possession of that parcel.[6] In the second count of the present complaint, the plaintiffs seek to require the defendant to perform its obligations under the lease.[7] In the third count of the complaint, the plaintiffs seek to quiet title to the fifty-two acre parcel.

On January 25, 2008, the defendant filed an answer and special defenses, including the defense of res judicata. The defendant then filed a motion for summary judgment, arguing, in part, that counts two and three of the complaint were barred by virtue of the judgment in *Nipmuc I*. In support of its motion for summary judgment, the defendant submitted an affidavit attesting that the situation as found by the court in *Nipmuc I* continued to exist, i.e., the lease remains in escrow and the condition precedent to its release has not occurred. On May 12, 2010, the court granted the motion for summary judgment, and this appeal followed.

---

[5] Title was acquired by way of a special warranty deed dated October 17, 2006. The deed was recorded on or about October 20, 2006.

[6] Nipmuc previously had brought an action in the United States District Court for the District of Connecticut, which was dismissed for lack of subject matter jurisdiction.

[7] The first count of the complaint was directed at the siting council and, thus, is irrelevant to this appeal.

On appeal, the plaintiffs argue that the court's application of the doctrine of res judicata to the present matter was inappropriate because their claims do not seek to vindicate the same interests at issue in *Nipmuc I.* Specifically, the plaintiffs argue that in the present matter they assert rights to a leasehold interest in the fifty-two acre parcel, whereas in *Nipmuc I,* Nipmuc sought a judgment only with respect to the duties of the escrow agent pursuant to the escrow agreement. The plaintiffs further argue that they were unable to raise the claims at issue in the present matter in the *Nipmuc I* action because the conduct of which they presently complain, namely, the defendant's failure to honor the plaintiffs' leasehold interest, did not accrue until title to the fifty-two acre parcel was transferred to the defendant after judgment was rendered in *Nipmuc I.*

In addition, the plaintiffs argue that the trial court's grant of summary judgment was inappropriate because there are genuine issues of material fact as to the intent of the parties to the lease agreement. Specifically, the plaintiffs argue that, regardless of whether the lease document was delivered from escrow, an issue of fact exists as to whether the parties to the lease agreement intended for the plaintiffs to have rights to occupy and use the fifty-two acre parcel absent their possession of the original lease document. We are not persuaded.

As a preliminary matter, we set forth the applicable standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of

showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . The test is whether the party moving for summary judgment would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) *Gateway, Kelso & Co.* v. *West Hartford No. 1, LLC*, 126 Conn. App. 578, 583, 15 A.3d 635, cert. denied, 300 Conn. 929, 16 A.3d 703 (2011). "Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . Additionally, the applicability of res judicata . . . presents a question of law over which we employ plenary review." (Citation omitted; internal quotation marks omitted.) *Weiss* v. *Weiss*, 297 Conn. 446, 458, 998 A.2d 766 (2010).

"The doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. . . . If the same cause of action is again sued on, the judgment is a bar with respect to any claims relating to the cause of action which were actually made or which might have been made." (Internal quotation marks omitted.) *Bender* v. *Bender*, 292 Conn. 696, 706–707, 975 A.2d 636 (2009). "The doctrine of res judicata is one of rest and is enforced on the ground of public policy." *Corey* v. *Avco-Lycoming Division*, 163 Conn. 309, 316, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973).

"We have adopted a transactional test as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata. [T]he claim [that is] extinguished [by the judgment in the first action] includes

all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. . . . In applying the transactional test, we compare the complaint in the second action with the pleadings and the judgment in the earlier action." (Citations omitted; internal quotation marks omitted.) *DiPietro* v. *Farmington Sports Arena, LLC,* 123 Conn. App. 583, 590–91, 2 A.3d 963, cert. granted on other grounds, 299 Conn. 920, 10 A.3d 1053 (2010).

Comparing the operative complaint in the present matter with the pleadings and judgment in *Nipmuc I,* it is clear that the plaintiffs' present claims arise out of the same transaction or series of transactions at issue in *Nipmuc I.*[8] In *Nipmuc I,* Nipmuc "requested that the court '[d]etermine and enter judgment declaring that the [fifty-two acre lease] is valid and in effect . . . .' In addition, it requested that [the escrow agent] be

[8] Summitwood was not a party to the *Nipmuc I* action. Nonetheless, it is undisputed that Nipmuc transferred an exclusive right to purchase the entire undeveloped tract of land encompassing the fifty-two acre parcel to Summitwood and that Summitwood entered into a sale agreement for the parcel, pursuant to which the lease back arrangement was created on behalf of Nipmuc. "[T]he concept of privity has moved away from the conventional and narrowly defined meaning of mutual or successive relationships to the same rights or property. It now signifies a relationship between one who is a party of record and another who is a nonparty, but is sufficiently close to mandate the application of res judicata or collateral estoppel." *Mazziotti* v. *Allstate Ins. Co.,* 240 Conn. 799, 813 n.12, 695 A.2d 1010 (1997). Because Summitwood's interests in the lease are sufficiently close to Nipmuc's, and they are related parties, the application of the doctrine of res judicata to Summitwood's present claims is appropriate.

directed to deliver the lease . . . ." *Nipmuc Properties, LLC* v. *PDC-El Paso Meriden, LLC*, supra, 103 Conn. App. 95. Moreover, Nipmuc specifically alleged in the *Nipmuc I* complaint that it was "the holder of a leasehold interest in approximately 51.935 acres of land . . . in Meriden pursuant to a written lease . . . ."[9] The judgment in *Nipmuc I* established that siting council approval was a condition precedent to the delivery of the lease and that such condition had not been met.[10] *Nipmuc Properties, LLC* v. *PDC-El Paso Meriden, LLC*, supra, 100.

In the present matter, the plaintiffs allege that the defendant has failed to accept tax payments tendered by Nipmuc in connection with Nipmuc's rights under the lease and that the defendant has prevented Nipmuc from taking possession of the fifty-two acre parcel.[11] In

[9] "This court may take judicial notice of court files in another suit between the same parties, 'especially when the relevance of that litigation was expressly made an issue at this trial.' *McCarthy* v. *Warden*, 213 Conn. 289, 293, 567 A.2d 1187 (1989), cert. denied, 496 U.S. 939, 110 S. Ct. 3220, 110 L. Ed. 2d 667 (1990)." *Legassey* v. *Shulansky*, 28 Conn. App. 653, 654 n.3, 611 A.2d 930 (1992).

[10] "Generally, an escrow takes effect as a fully executed instrument at the time when it is rightfully delivered by the depositary to the grantee, obligee, or payee, that is, it takes effect from the second delivery." 30A C.J.S. 613–14, Escrows § 6 (2007). The *Nipmuc I* court's determination that a condition precedent to delivery of the escrowed lease had not been met establishes that the lease is inoperative. Cf. *Grilley* v. *Atkins*, 78 Conn. 380, 384, 62 A. 337 (1905) ("where the future delivery [of a deed] depends upon the performance of some condition . . . the deed does not become operative until rightfully delivered by the depositary to the grantee").

[11] Although the plaintiffs assert that their claims against the defendant accrued subsequent to *Nipmuc I*, after Meriden Gas Turbines had transferred title to the fifty-two acre parcel to the defendant, that factual distinction is unavailing. The preclusive effect of res judicata applies not only to the parties to a prior action, but also to their privies. *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 600, 922 A.2d 1073 (2007). The defendant was not only a party to the *Nipmuc I* action, but is also a successor in interest with respect to the fifty-two acre parcel and is, therefore, in privity with Meriden Gas Turbines. Cf. *LaBow* v. *Rubin*, 95 Conn. App. 454, 462 n.5, 897 A.2d 136 ("[w]e have stated that a successor in interest is in privity with a previous owner for purposes of collateral estoppel"), cert. denied, 280 Conn. 933, 909 A.2d 960 (2006).

their present complaint, the plaintiffs seek not only declaratory relief, but also orders requiring the defendant to perform its obligations under the lease and quieting title to the fifty-two acre parcel. It is apparent from our review of the record that the plaintiffs' claims in the present action, seeking to effectuate the turnover of their purported leasehold interests, and their claims in *Nipmuc I*, seeking the release of the lease from escrow, stem from the same agreement pertaining to that lease and seek redress on the basis of the same underlying factual predicate, namely, the siting council's decision rejecting the plaintiffs' efforts to obtain the release of the lease from escrow and ordering the transfer of the fifty-two acre parcel to the defendant. Similarly, the plaintiffs' claim that the parties to the underlying lease agreement intended for the lease to have operative effect regardless of physical possession of the lease document arises from the same common nucleus of facts as set forth in the *Nipmuc I* action.

Res judicata, or claim preclusion, "bars not only subsequent relitigation of a claim previously asserted, but subsequent relitigation of any claims relating to the same cause of action . . . which might have been made." (Internal quotation marks omitted.) *Isaac* v. *Truck Service, Inc.*, 253 Conn. 416, 421, 752 A.2d 509 (2000). "[T]he appropriate inquiry with respect to [claim] preclusion is whether the party had an *adequate opportunity to litigate the matter in the earlier proceeding* . . . ." (Emphasis in original; internal quotation marks omitted.) *Connecticut National Bank* v. *Rytman*, 241 Conn. 24, 43–44, 694 A.2d 1246 (1997). The *Nipmuc I* action provided the plaintiffs ample opportunity to raise their claim to an independent leasehold interest, separate and apart from the escrowed lease document considered in *Nipmuc I*, against Meriden Gas Turbines, the defendant's predecessor in interest to the fifty-two acre parcel.[12] Moreover, a pragmatic

[12] We need not reach the plaintiffs' argument that the trial court failed to give proper weight to affidavits purporting to evince the parties' intent that

view of the record convinces us that the *Nipmuc I* action and the present matter form a convenient trial unit, involving a significant overlap of potential witnesses and evidence, and that treatment as a unit would conform to the parties' expectations and business understanding. Accordingly, because the plaintiffs' present claims arise from the same common nucleus of operative facts as the claims raised in *Nipmuc I*, and because the plaintiffs could have raised their present claims in the *Nipmuc I* action, they are now precluded from raising such claims in the present matter. Therefore, the court properly rendered summary judgment in this case.

The judgment is affirmed.

In this opinion the other judges concurred.

Nipmuc would have a right to occupy, possess and use the fifty-two acre parcel without having physical possession of the lease document. These claims go to the merits of the plaintiffs' action, which we have determined is barred by res judicata.