CHRISTINE UMSTEADT *v.* G. R. REALTY, TRUSTEE FOR RONALD ZOARSKI ET AL.
(AC 30870)

Flynn, C. J., and DiPentima and Sullivan, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued February 16—officially released August 3, 2010

*Kenneth J. Mulvey, Jr.*, with whom, on the brief, was *Francis J. Drumm III*, for the appellants (defendants).

*Gary G. Cooper*, for the appellee (plaintiff).

*Opinion*

FLYNN, C. J. The defendants, G. R. Realty, trustee for Ronald Zoarski and Gerald Zoarski, and Ronald Zoarski and Gerald Zoarski, appeal from the judgment of the trial court denying their motion to set aside the jury verdict in favor of the plaintiff, Christine Umsteadt. On appeal, the defendants claim that the court improperly: (1) failed to deliver their requested jury charge in accordance with the principles of *Kraus* v. *Newton*, 211 Conn. 191, 558 A.2d 240 (1989), although the evidence supported the instruction; (2) instructed the jury on constructive notice without a proper evidentiary

foundation for such a charge; (3) instructed the jury that in determining whether the defendants had constructive notice of the dangerous condition, its consideration of the length of time the condition existed was permissive rather than mandatory; and (4) instructed the jury that the sidewalk where the plaintiff's injury occurred was a public sidewalk and that the plaintiff was an invitee of the defendants despite the absence of evidence of these facts. We agree with the defendants that the court should have given the jury an instruction based on the holding of *Kraus*.[1] We, therefore, reverse the judgment of the trial court.

The record contains the following relevant facts and procedural history. On February 6, 2004, at approximately 3 p.m., the plaintiff left her place of employment in West Haven and drove to Campbell Avenue in West Haven for an appointment with her accountant. There was no accumulation of ice or snow on her car when she left her workplace. The plaintiff described the weather during her drive as "overcast, misty, kind of misting." She believed that "there was weather earlier" but could not remember if it had rained or snowed, only that she had left home for work early that day in anticipation of poor driving conditions.

Due to the busy nature of Campbell Avenue and the accumulated snow on the street, parking was limited. Upon arriving at her accountant's office, the plaintiff parked on the opposite side of the street from the office and proceeded to walk across the street. The plaintiff noticed that the nearby intersection of Noble Street and Campbell Avenue was flooded, as was the driveway abutting her accountant's office. Because of these conditions, the plaintiff decided to enter the sidewalk in front of the defendants' building at 128-130 Campbell

---

[1] Because our conclusion with regard to the defendants' first claim is dispositive of their appeal, we need not reach their additional claims.

Avenue[2] by walking between two parked cars where there was a depression in the snow. The area in front of 128-130 Campbell Avenue contains a sidewalk and, between the sidewalk and the street, an area covered with grass. The depressed area of snow through which the plaintiff walked was on this grassy area. The plaintiff testified that when she went to step with her right foot onto the sidewalk, her foot gave way causing her to fall. After falling, the plaintiff observed that the area into which she had stepped was "a puddle" that contained "accumulated ice or snow" and that there was no sand or salt on that portion of the sidewalk. She testified that she told the paramedics who came to assist her that she "fell on the ice on the sidewalk." The paramedic's report, entered into evidence by the plaintiff, indicated that there was "snow/slush" on the sidewalk and that the plaintiff was lying in a puddle of slush. As a result of her fall, the plaintiff suffered a fractured right ankle that required surgery.

Gerald R. Zoarski (Zoarski), the father of Ronald Zoarski and Gerald Zoarski, performed the maintenance work at 128-130 Campbell Avenue at the time of the plaintiff's fall. Prior to February 6, 2004, Zoarski made an arrangement with one of the tenants of the property to shovel snow and ice from the sidewalk in front of the building in the morning before the tenant left for work. Zoarski was at the property on a daily basis, and he would inspect the property, removing any snow or ice that remained on the sidewalk after the tenant had left for work. On the morning of February 6, 2004, Zoarski inspected the sidewalk in front of the property and did not find any snow or ice on the sidewalk.

---

[2] The property, an eight unit apartment building, is owned by the defendant G. R. Realty as trustee for the defendants Ronald Zoarski and Gerald Zoarski. Gerald R. Zoarski, the father of Ronald Zoarski and Gerald Zoarski, testified that he had an ownership interest in the property but stated that he did not "personally" own the building.

On the afternoon of February 6, 2004, one of the tenants of 128-130 Campbell Avenue, Joan Lipford, called Zoarski and told him that someone had fallen on the sidewalk in front of the property. Zoarski proceeded to the property, arriving at approximately 4:30 p.m. He testified that his inspection of the sidewalk in the area where the plaintiff had fallen revealed no ice or snow and that the sidewalk was wet but did not contain any puddles of water. Lipford testified that she saw the plaintiff fall. She further testified that February 6, 2004, "was cold and rainy" and that when the plaintiff fell, there was a light rain.

The plaintiff entered into evidence National Oceanic and Atmospheric Administration climatological records for January and February, 2004. The records revealed that on February 6, 2004, the weather at various times between approximately 7 a.m. and approximately 4 p.m. included light snow, freezing rain, heavy rain, light rain and mist. The temperature at 7 a.m. was 28 degrees Fahrenheit; at 10 a.m. it was 32 degrees Fahrenheit; at 1 p.m. it was 33 degrees Fahrenheit; and at 4 p.m. it was 35 degrees Fahrenheit.

The defendants submitted proposed jury instructions that included a charge based on the holding of *Kraus* v. *Newton*, supra, 211 Conn. 191, that, absent the existence of unusual circumstances, the defendants were entitled to wait a reasonable period of time after the end of the storm before removing ice from the sidewalk.[3] The court did not charge the jury in accordance

---

[3] The relevant portion of the defendants' proposed jury instructions stated: "Absent unusual circumstances, the defendants, in fulfilling their duty to the plaintiff, were entitled to wait until a reasonable time after the end of the storm before removing ice from the outside walks. The law does not require the defendants to engage in an impractical effort with the forces that may be uncontrollable while the storm is in progress.

"Unusual circumstances may exist only if you find that there were no other practical means of egress from the premises and that all perceptible accumulations had ceased. Absent such findings, the defendant was entitled to wait until a reasonable time after the end of the storm before removing the ice from the premises."

with the principles of *Kraus*, and the defendants took an exception to the court's failure to so charge. Following a verdict in which the jury found that the defendants were 55 percent negligent in causing the plaintiff's injuries, the defendants filed a motion to set aside the verdict, arguing, inter alia, that the court improperly failed to include the *Kraus* charge in its instructions. The court denied the motion, stating in a memorandum of decision that it "did not give the charge as requested based upon the lack of evidence of an ongoing snow or ice storm that is a predicate for such a charge." The present appeal followed.

The defendants claim on appeal that the court improperly failed to instruct the jury in accordance with their request to charge on the principles of *Kraus* v. *Newton,* supra, 211 Conn. 191. They argue that the evidence adduced at trial, particularly the testimony of the plaintiff and Lipford, the paramedic's report and the climatological records submitted by the plaintiff, supported the proposed instruction. The failure to give the proposed instruction, they contend, prejudiced the defendants because it deprived them of the opportunity to have "the jury consider whether their duty to the plaintiff was suspended at the time of her fall due to the continuing storm . . . ." The plaintiff argues that the court, in charging the jury on premises liability and negligence, actual and constructive notice, and that such notice must be of the specific defect alleged by the plaintiff, properly "present[ed] the principle enunciated in *Kraus,* that the defendant need not engage in activity to remove ice until a reasonable period of time after the conclusion of the storm." We agree with the defendants that the jury should have been charged under the principles of *Kraus.*

Before addressing the defendants' claim, which was preserved for appellate review by way of the defendants' submission of proposed instructions and their

exception to the court's charge as delivered; see *National Publishing Co.* v. *Hartford Fire Ins. Co.*, 287 Conn. 664, 666 n.2, 949 A.2d 1203 (2008); we set forth the standard of review for a challenge to the propriety of a jury instruction. "The test to determine if a jury charge is proper is whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . [W]e must determine whether the jury instructions gave the jury a reasonably clear comprehension of the issues presented for their determination under the pleadings and upon the evidence and were suited to guide the jury in the determination of those issues. . . . [I]n our task of reviewing jury instructions, we view the instructions as part of the whole trial. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Moreover, [a] refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance." (Internal quotation marks omitted.) *Baranowski* v. *Safeco Ins. Co. of America*, 119 Conn. App. 85, 90, 986 A.2d 334 (2010).

"It is well established that [a] request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. . . . [A] trial court should instruct a jury on [every] issue for which there is any foundation in the evidence, even if weak or incredible. . . . The trial court has a duty not to submit any issue to the jury upon which the evidence would not support a finding. . . . Accordingly, the right to a jury instruction is limited to those theories for which there is any foundation in the evidence. . . . In determining whether any such foundation exists, [w]e must consider the evidence presented at trial in the light most favorable to supporting the [party's] request to charge. . . . Additionally, [w]hen . . . the

trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Wasko* v. *Farley*, 108 Conn. App. 156, 169–70, 947 A.2d 978, cert. denied, 289 Conn. 922, 958 A.2d 155 (2008).

In *Kraus* v. *Newton*, supra, 211 Conn. 192, the plaintiff, a meter reader for a utility company, went to the defendant's property to read the meter. Freezing rain, which had begun the previous evening, fell at the time. Id., 192–93. The plaintiff slipped and fell while descending the defendant's stairs, which, along with the handrail, were covered with ice. Id., 193. During trial of the plaintiff's negligence claim, the defendant testified that "she did not place sand on the stairway, despite her knowledge of the storm, her proximity to the premises, which she rented to others, and her knowledge that a meter reader was expected" on or about the same time each month. Id. The court charged the jury in part that "the rule of law is that an owner may await the end of a freezing rain or sleet storm and a reasonable time thereafter before removing ice and snow from its outside entrance walks, platforms, and steps." (Internal quotation marks omitted.) Id. The jury returned a verdict in favor of the defendant. Id. On appeal to the Appellate Court, the plaintiff claimed error in the trial court's jury instruction. Id., 195. This court concluded that the "instructions were proper and consistent with the well established rule of law in other jurisdictions." Id.

Our Supreme Court affirmed this court's judgment. Id., 198. Noting that there was evidence from which the jury reasonably could have determined that a storm was ongoing at the time of the plaintiff's fall, the Supreme Court held: "We believe that in the absence of unusual circumstances, a property owner, in fulfilling

the duty owed to invitees upon his property to exercise reasonable diligence in removing dangerous accumulations of snow and ice, may await the end of a storm and a reasonable time thereafter before removing ice and snow from outside walks and steps. To require a landlord or other inviter to keep walks and steps clear of dangerous accumulations of ice, sleet or snow or to spread sand or ashes while a storm continues is inexpedient and impractical. Our decision, however, does not foreclose submission to the jury, on a proper evidentiary foundation, of the factual determinations of whether a storm has ended or whether a plaintiff's injury has resulted from new ice or old ice when the effects of separate storms begin to converge." Id., 197–98.

Having reviewed the record of the present case, we conclude that the court should have charged the jury in accordance with the principles of *Kraus*. The jury heard evidence submitted by both the plaintiff and the defendants concerning the weather and its effects prior to and at the time of the plaintiff's fall. The plaintiff testified that when she left work to proceed to her accountant's office, she did not have to clear ice or snow from her car. She described the weather while she drove as "overcast, misty, kind of misting." The plaintiff was unable, however, to remember whether it had rained or snowed earlier in the day, recalling only that she had left home early in the morning anticipating that driving conditions would be poor. She testified that she fell in "a puddle" on the sidewalk containing "accumulated ice or snow." Lipford testified that a light rain fell at the time of the plaintiff's fall. The climatological records entered into evidence by the plaintiff detailed a number of different types of weather between 7 a.m. and 4 p.m. on the day of the plaintiff's fall, including light snow, freezing rain, heavy rain, light rain and

mist. These records also showed that the temperature during this period hovered around the freezing point.

To be sure, a portion of the evidence concerning the weather and its effects was in conflict. Zoarski testified that on the morning of February 6, 2004, he inspected the sidewalk in the area where the plaintiff fell and did not find any snow or ice. He further testified that after the plaintiff fell, he observed the same sidewalk and did not see any puddles of water. This inconsistency, however, did not mitigate against the giving of the *Kraus* charge. Under these circumstances, the jury was required to make "the factual determinations of whether a storm has ended . . . ." *Kraus* v. *Newton,* supra, 211 Conn. 198. Such a determination is crucial in a premises liability case alleging negligence against a landowner, as under the rule in *Kraus,* "absent unusual circumstances, a landowner's duty to remedy the effects of a storm does not arise until the end of a storm and a reasonable time thereafter." *Sinert* v. *Olympia & York Development Co.,* 38 Conn. App. 844, 850, 664 A.2d 791, cert. denied, 235 Conn. 927, 667 A.2d 553 (1995). The failure to give the requested *Kraus* charge despite the weather evidence that had been submitted deprived the defendants of the opportunity to have the jury make a determination of whether a winter storm was ongoing at the time of the plaintiff's fall or whether a reasonable time had passed since the storm ceased such that the defendants' duty to clear any unsafe ice or snow from their sidewalk was operative. The failure thus prejudiced the defendants.

The plaintiff's argument that the court's jury instructions covered the relevant principles of *Kraus,* albeit in different language, is unavailing. The court charged the jury on the law of negligence, premises liability, and actual and constructive notice. The charge also stated that notice by the defendants must be of the specific defect alleged by the plaintiff. These instructions, however, are not sufficient to state the principle

holding of *Kraus* that, absent unusual circumstances, a landowner is allowed to await the end of a winter storm, and a reasonable time thereafter, before removing ice and snow deposited by that storm. In other words, as this court has stated, the landowner's duty to remove ice and snow does not arise until after a reasonable period has passed following the conclusion of the storm. See id., 850. This principle is not covered adequately in a charge explaining premises liability or notice, for example. It is not the same as instructing the jury that it must determine whether the defendants had actual or constructive notice of the specific defect in question in time to remedy it or to take other precautions. Given the evidentiary backdrop of the case presented to the jury, the defendants were entitled to charges, inter alia, regarding both *Kraus* and actual and constructive notice.

A trial court must give a requested jury instruction on any issue for which there exists "any foundation in the evidence . . . ." (Internal quotation marks omitted.) *Wasko* v. *Farley*, supra, 108 Conn. App. 169. On appeal, this court is required to view the evidence presented at trial in the light most favorable to supporting the party's request to charge. Id., 169–70. In this case, the evidence concerning the weather preceding and contemporaneous with the plaintiff's fall provided a foundation for the defendants' requested instruction based on *Kraus*.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.